[Civ. No. 69762. Second Dist., Div. Five. Mar. 18, 1985.]

PAMMI BEVLI, Plaintiff and Respondent, v.
C. CHESTER BRISCO, as Arbitrator, etc., Defendant and Respondent;
BOARD OF TRUSTEES OF THE RIO HONDO
COMMUNITY COLLEGE DISTRICT et al.,
Real Parties in Interest and Appellants.

COUNSEL

Wagner, Sisneros & Wagner and John J. Wagner for Real Parties in Interest and Appellants.

Lawrence B. Trygstad and Richard J. Schwab for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**KOLTS, J.**\*—This is an appeal by the Board of Trustees of the Rio Hondo Community College District and Rio Hondo Community College District, real parties in interest (hereinafter District), from a judgment which ordered the issuance of a writ of mandate directing the real parties in interest to set aside the discharge of plaintiff-respondent and reinstate her with backpay.

Respondent Dr. Pammi Bevli was employed as a chemistry instructor by the District in 1966, serving as a tenured employee until 1977. At that time Raymond Fritsch (Fritsch), chairman of respondent's department, undertook to investigate certain complaints regarding her. Fritsch prepared evaluations on several occasions noting a need for improvement, and when none was forthcoming, the District gave formal notice to respondent pursuant to Education Code section 87734 on July 18, 1979, that she must improve or that she might be terminated.

---

*Assigned by the Chairperson of the Judicial Council.

Respondent took a medical leave for the entire fall semester of 1979. When she advised the District that she intended to return to her teaching duties for the spring term of 1980, the District notified her that the incompetency notice served in July would be put into effect.

On February 4, 1980, she returned to her duties and left on April 17, 1980, for the balance of the school year. She was adversely evaluated during this period.

On August 28, 1980, the vice president in charge of instruction notified respondent in writing that he intended to recommend her dismissal to the District, and invited her to meet with him in this regard. She did not accept this opportunity. On September 5, 1980, the District dismissed her, citing 67 factual allegations to support charges of incompetency, evident unfitness for service and persistent refusal to obey rules and regulations.

Respondent requested a hearing on her dismissal which was held by an arbitrator, C. Chester Brisco (Brisco), mutually agreed upon by the parties. After several days of hearings, Brisco determined that the written notices of incompetency issued in 1979 and the written statement of charges did not comply with the requirements of Education Code section 87734, that the District could not act upon the allegation of incompetency and that Brisco could not consider that charge. He further ruled that he had the authority to consider the remaining charges, and as a result of that consideration, the District did have cause to suspend and dismiss respondent.

■ The threshold question which presents itself is set forth in appellant's brief: Whether the appellant District is entitled to plead multiple causes for dismissal which are all or in part supported by common factual allegations under Education Code sections 87732 and 87734.

Education Code section 87732 enumerates a number of specific grounds calling for the dismissal of regular employees including subdivisions:

"(d) Incompetency.

"(e) Evident unfitness for service.

"(f) . . . . . . . . . . . . . . . . . . . . . . .

"(g) . . . refusal to obey the . . . reasonable regulations prescribed . . . by the governing board of the community college district employing him or her." Education Code section 87734 provides in part: "The governing board of any community college district shall not act upon any charges of

unprofessional conduct or incompetency unless during the preceding term or half school year prior to the date of the filing of the charge, and at least 90 days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unprofessional conduct or incompetency, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his faults and overcome the grounds for such charge. The written notice shall include the evaluation made pursuant to Article 4 (commencing with Section 87660) of this chapter, if applicable to the employee. 'Unprofessional conduct' and 'incompetency' as used in this section means, and refers only to, the unprofessional conduct and incompetency particularly specified as a cause for dismissal in Section 87732 and does not include any other cause for dismissal specified in Section 87732.''

The findings of Brisco indicate his close adherence to the requirements of each of these statutory provisions, in that the District was expressly found to have failed to meet the notice requirements of Education Code section 87734 as to the allegation of incompetency.

But does this determination preclude a finding that the individual incidents specified in the notice may not serve as the basis for a finding that there is "evident unfitness for service" or that portions thereof may constitute a "refusal to obey the . . . reasonable regulations prescribed . . . by the governing board of the community district employing him or her?''

This court is unaware of any rule of law which proscribes the use of single facts to support multiple theories of legal responsibility. While "evident unfitness for service" may also constitute factual "incompetency" under Education Code section 87734, there is no authority which prevents the trier of fact from accepting one theory while rejecting the other. "Incompetency" requires certain procedural steps leading to termination; "evident unfitness for service" does not.

*Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964 [194 Cal.Rptr. 672] holds that the provisions of Education Code section 44932, a section substantially the same as Education Code section 87734 referring to school rather than college districts, permits the finding of "evident unfitness for service," even though the allegation of "unprofessional conduct" was dismissed by the District at the outset of an administrative hearing. Here, Brisco specifically found that the "District shall not act upon the charge of incompetency and the arbitrator may not consider that charge.'' To say that he is unable to determine

the remaining issues of evident unfitness and failure to follow District regulations is to disregard the clear holding of *Pittsburg, supra.*

*Perez* v. *Commission on Professional Competence* (1983) 149 Cal.App.3d 1167 [197 Cal.Rptr. 390] offers additional clarification in this regard. In that case the school district terminated an employee based on Education Code section 44932 subdivisions (a) unprofessional conduct, and (d) incompetency. At page 1175, the court stated "[a] particular act or omission on the part of a teacher may constitute more than one of the causes for his removal under section 44932."

■ Continuing at page 1175, ". . . causes for dismissal such as moral turpitude, unprofessional conduct and evident unfitness to teach are to be construed against the *Morrison* [v. *State Board of Education* (1969) 1 Cal.3d 214 (82 Cal.Rptr. 175, 461 P.2d 375)] standard of fitness to teach . . . ."

That standard is, "We therefore conclude that the Board of Education cannot abstractly characterize the conduct in this case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of section 13202 of the Education Code unless that conduct indicates that the petitioner is unfit to teach. In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the board in determining whether the teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards." (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, at pp. 229-230 [82 Cal.Rptr. 175, 461 P.2d 375], fns. omitted.)

■ In order for Brisco to reach the conclusions required by the nature of the proceedings before him and the dictates of *Morrison, supra,* it would be necessary for him to consider specific incidents which would inextricably combine evidence showing incompetency with evidence showing evident unfitness to serve.

Brisco held evidentiary hearings on June 2, 3, 5, 12, 15, 16 and July 2, 21, 28, 1981, submitting a lengthy opinion and award. Respondent was

represented by counsel who participated in all of these proceedings. Brisco found that the District had proved its charge of evident unfitness for service against respondent, specifically noting that she was unable to define certain words, explain basic concepts of chemistry such as "significant numbers," the amount of electric power going through a system, the Dumas method of determining molecular weight, conduct an electrolysis experiment, or radiation experiment although supplied with the necessary equipment. He further considered testimony of numerous lecture mistakes and errors in grading examinations, finally concluding that "she is unable to employ knowledge of the subject matter at a professional level. Even at a subprofessional level she is inadequate, unless she has complete written instructions, or she has recently reviewed the material, or she has recently practiced with the laboratory equipment."

Handicapped by the absence of appropriate findings, we must still turn our attention to the determination by the trial court relative to the issue of a fair hearing. The minute order of October 5, 1982, states, "Furthermore, [respondent] was deprived of a fair hearing in that she was required to answer questions and perform experiments which were not related to any of the allege incidents providing grounds for action against her, and the arbitrator relied upon her answers to such question and her apparent difficulty in performing the experiments in making his determination."

If we accept the general rule of relevance expressed in Government Code section 11513, subdivision (c), "[t]he hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. . . ." The evidence offered is admissible.

It appears to this court that requesting respondent to perform experiments which she had been responsible for teaching over a number of years would hardly constitute unfairness, particularly when the experiments were the subject of the complaints which gave rise to these proceedings. In addition, these areas were explored on cross-examination, after respondent had denied the allegations and asserted her proficiency in performing these experiments.

Finally we address appellant's argument that the trial of the matter lasted more than one day and that the trial court improperly rejected a timely request for a statement of decision. We agree.

Code of Civil Procedure section 632, as pertinent, reads: "In superior . . . courts, upon the trial of a question of fact by the court, written findings

of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. . . ."[1]

In analyzing how long a trial "lasts," we must first determine when it commences and when it concludes. A nonjury "trial shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or counsel, and if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence." (Code Civ. Proc., § 581, subd. (a).)

Trial court proceedings on petitions for writ of administrative mandamus are unique because, as here, the trial ordinarily consists of introducing all or portions of the administrative record into evidence, reading and considering same, listening to the arguments of counsel and then either ruling directly from the bench at the conclusion of argument or, as was done in the case at bench, submission of the matter for further consideration and ultimate issuance of a statement of intended decision. The trial did not commence here by an opening statement of the plaintiff or his counsel or by oath or affirmation to the first witness because there was none administered. This trial was commenced by the introduction of evidence.

The minute order in the superior court file reveals that the trial court commenced its hearing at 10:08 a.m. on September 28, 1982.[2] At that time, the court formally admitted nine volumes of the administrative transcript into evidence collectively as exhibit 1. By stipulation, the other exhibits were formally admitted as exhibit 2. This procedure was very brief, and although we do not know how many minutes elapsed in this episode, the entire evidentiary offers were concluded in less than five pages of the re-

---

[1]Rule 232 of the California Rules of Court purports to implement the legislative intent found in Code of Civil Procedure section 632. This rule contains subdivisions (a) through (h) and outlines times for preparation and service of proposed statement of decision and judgment, objections to proposed statement of decision and other matters not pertinent here. Subdivision (h) reads: "This rule does not apply if the trial was completed within one day." However, subdivision (h) was adopted January 1, 1983, which was after the judicial determination in the case at bench.

[2]"Judicial notice may be taken of the following matters . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States." (Evid. Code, § 452, subd. (d).)

porter's transcript. The balance of the 39-page reporters' transcript was devoted to argument. On page six, the court notes: "Incidentally, I have read and considered the transcript of the administrative hearing and the exhibits admitted at the administrative hearing. It took from 10:00 o'clock yesterday morning until 11:00 o'clock last night and from 6:00 o'clock to 8:00 o'clock this morning to do so, but it has been done." It is apparent, therefore, when the court commenced the process of reading the administrative transcript and the exhibits introduced at the administrative hearing, in the context of the superior court proceedings, it was considering the evidence. This is the operative reality, notwithstanding the fact that the parties did not formally stipulate to the introduction of exhibits 1 and 2 into the superior court proceeding until just moments before they began their arguments the following day. It is not untypical for administrative mandamus proceedings to be handled in this manner where after the judge knows that the case is going to be assigned to him he will begin the informal process of reading the administrative record. ██ ██ ██ This ordinarily constitutes the trial of the action from an evidentiary standpoint, with the express or tacit understanding with counsel that when they later begin to argue the case that they will formally place on the record and into the record the evidence in the form of the administrative transcript and exhibits considered by the administrative hearing officer.[3]

██ Under the facts of this case for the purposes of Code of Civil Procedure section 632, the trial was concluded at the time of the announcement of a tentative decision.

The trial judge, in his minute order of October 5, 1982, stated, "Counsel for [respondent] shall prepare, serve upon opposing counsel and submit to the Court a proposed form of judgment and writ of mandate, and, if requested, a statement of decision."

The District timely filed such a request on October 15, 1982, which was denied from the bench as follows: "In the Minute Order of October 5, 1982, I made a reference to a possible statement of decision, but I hadn't adverted to the fact that the case was tried in less than one day and no request had been made before the matter was submitted, so the request for a statement of decision is denied."

As we have noted, the record discloses that the court spent as much as 13 hours considering testimony and the exhibits offered at the arbitration hearings. The passage of time, as lengthy as this, would certainly constitute

---

[3]Reading of briefs prior to the appearance of counsel would not constitute commencement of trial. (Cf. Code Civ. Proc., § 581.)

more than a day's efforts for most trial judges. But more importantly to say that this case was completed in less than one day would be to ignore that which had gone before: a close and thorough perusal of the administrative record on the preceding day. If this time is expended by the trial court in absorbing the evidentiary information for trial, it must be considered as trial time for the purposes of findings under Code of Civil Procedure section 632.

■ The present proceedings involve consideration of a petition for administrative mandamus which require the trial court to exercise its judgment in an independent review of the record. (Code Civ. Proc., § 1094.5, subd. (c).) Further, the vested rights of respondent as a tenured employee are under consideration. As stated in *Roccaforte* v. *City of San Diego* (1979) 89 Cal.App.3d 877, at pp. 886-887 [152 Cal.Rptr. 558], "Where as here the applicable scope of review is that of independent judgment, findings must be made if requested. [Citations.] Further . . . findings would enable the reviewing party to determine what test the trial court employed in reviewing the administrative decision and the ground upon which it found that test to be applicable."

■ In *Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129 [210 Cal.Rptr. 114], the court held, "Section 632 [Code Civ. Proc.] clearly specifies that the issuance of a statement of decision upon timely request therefor is mandatory. Because the trial court failed to issue such a statement despite a timely request therefor, reversal is required. [¶] We impose no substantial burden upon trial courts by insisting upon adherence to the legislative mandate as explicated by rule 232 [Rules of Court]. The trial court is specifically authorized to designate a party to prepare a statement of decision . . . and thus is required only to review the statement and any objections thereto and to make or order to be made any corrections, additions, or deletions it deems necessary or appropriate."

The failure of the trial court to support its decision by written statement of decision leaves this court with no alternative but to reverse the judgment.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied April 15, 1985, and the petition of plaintiff and respondent for review by the Supreme Court was denied May 15, 1985.