54 Cal.Rptr.3d 515 (2007)
147 Cal.App.4th 838
Joseph CIRAULO et al., Plaintiffs and Appellants,
v.
CITY OF NEWPORT BEACH, Defendant and Respondent.
No. G034963.
Court of Appeal of California, Fourth District, Division Three.
January 17, 2007.
*517 Kevin E. Monson, Costa Mesa, for Plaintiffs and Appellants.
Robin L. Clauson, City Attorney, and Daniel K. Ohl, Deputy City Attorney; Rutan & Tucker and Philip D. Kohn, Costa Mesa, for Defendant and Respondent.
BEDSWORTH, Acting P.J.
Joseph and Carole Ciraulo appeal from the trial court's order denying their petition for a writ of mandate. The Ciraulos had sought an order requiring the City of Newport Beach (the City) to grant them a variance from the ordinary strictures of its building code, and thereby allow then to retain the portion of their newly-built home which had been constructed in violation of that code. The Ciraulos argue the trial court's order must be reversed for two reasons: First, they assert the court abused its discretion in denying their request to take limited discovery to augment the administrative record in support of their estoppel claim; and second, they contend the court prepared an insufficient statement of decision.
For its part, the City contends not only that both the trial court's discovery order and its statement of decision were proper, but that the Ciraulos' mandate petition was not timely filed and served, and should have been denied on that basis alone. We affirm the trial court's decision. In our view, the mandate petition was timely, as the applicable statute of limitations was stayed until the City actually served the written notice required by Code of Civil Procedure section 1094.6.[1] However, we also conclude the trial court acted within its discretion in denying the Ciraulos' request to take discovery. Their proposed augmentation was in support of their claim the City should be "estopped" from denying them a variance, because one of its inspectors had actually lied to the city council in claiming that their improper alteration of the structure had taken place only after the initial framing inspection. *518 But the Ciraulos were fairly apprised of the inspector's statement prior to their administrative hearing before the city council, and thus had an opportunity to address it in that proceeding. What's more, we cannot see how this distinction is significant.
The real problem in this case is that the Ciraulos cannot distance themselves, legally or equitably, from the actions of their contractormuch as they might like to at this point. It is undisputed that the Ciraulos had authorized him to proceed with an expansion of their structure, beyond the scope approved by the City, and delegated to him the responsibility to ensure it was done properly. Rather than obtaining permission for the change, he proceeded without it, apparently hoping the City would acquiesce once the improper expansion was completed. His misconduct is attributable to the Ciraulos, and dooms their claim for equitable relief.
Finally, we conclude the Ciraulos had no right to a statement of decision under section 632, because the trial was completed in less than a day, and they failed to request one at the time the case was submitted for decision.

* * *
The Ciraulos obtained a building permit in February 2002, allowing them to demolish an existing duplex structure, and replace it with a two-story single family home. The permit allowed for, among other things, a 25-square-foot structure to be built on the home's rooftop deck. The purpose of this structure was to house an elevator shaft. The City's zoning ordinance specifically allowed a 5-by-6-foot elevator structure to extend five feet higher than the usual 24-foot height limit otherwise imposed by the ordinances. However, at some point after the permit had issued, the Ciraulos and their contractor decided to significantly enlarge the rooftop structure, from the approved 25 square feet to approximately 125 square feet. The expanded area, five times what had been approved, was to include a bathroom, an elevator "foyer," small storage area, and a fireplace. According to the Ciraulos, they told their contractor they wanted the rooftop structure to be enlarged only if properly approved by the City. He assured them he would "obtain all necessary approvals of the City." However, despite that promise, the contractor never sought a permit for the expanded structure.
City inspections of the construction commenced in February of 2002. On May 1, 2002, a City inspector reviewed the building's "Roof Framing & Building Ht." There is conflicting evidence regarding whether the rooftop structure had already been enlarged at the time of that framing inspection. The Ciraulos claim it was, and that the framing was actually inspected, and approved, in that expanded form. The City contends, however, that the initial framing inspector reviewed, and approved, a 25-square-foot rooftop structure which was in compliance with the original plans. The City claims the structure was improperly enlarged only after this initial inspection.
In June of 2002, the Ciraulos' architect prepared "as-built" drawings, which reflected the changed dimensions of the rooftop structure, in connection with a request for a permit to install fire sprinklers in the home. The City approved that sprinkler permit on June 20, 2002. Subsequent inspections of other phases of construction occurred in June, July, and September of 2002. It was not until the inspection of September 26,2002, that the Ciraulos were ordered to "obtain approval for all revisions to 3rd floor deck i.e. added square footage to walls at elevator shaft and toilet area."
*519 In March of 2003, the Ciraulos applied to the city planning commission for a variance to allow them to retain their enlarged rooftop structure. A hearing on the variance request was scheduled for May 22, 2003. In connection with that hearing, the planning commission staff prepared a report which included a discussion of the relevant facts, and an analysis of the criteria applicable to the variance.
The staff report expressly stated the conclusion that the Ciraulos had originally framed the rooftop structure in accordance with the approved plans, and it was only after the rooftop framing inspection "that the additional framing for the unpermitted improvements on the third level was done...." The report theorized that the subsequent inspectors would have simply assumed the rooftop structure remained in the form approved, and would not have independently inquired. Additionally, the staff report noted that any failure of the City's subsequent inspectors to address the issue was attributable to the Ciraulos' own conduct. They and their contractor had an affirmative obligation to inform the inspectors of any changes to their plans, but had failed to do so.
The report also noted that grant of a variance must be based upon specific findings, including: (1) there are exceptional circumstances applicable to the land, building or use which do not apply generally to other properties in the same district; (2) the grant of a variance is necessary for the preservation and enjoyment of substantial property rights; (3) the grant of the variance is consistent with the purposes of the code and would not constitute a "special privilege"; and (4) the grant of the variance would not be materially detrimental to the public welfare.
The report concluded the Ciraulos had not demonstrated a basis for any of these findings. Their property was not exceptional for the neighborhood; they had no cognizable property interest in the portion of the structure which they created "illegally;" their expanded roof structure would amount to a special privilege; and the project could be deemed detrimental "because it doesn't further the goals of the existing height limit."
At the hearing, the Ciraulos introduced witness statements, photographs, and letters from several others in the community supporting the grant of a variance. They specifically argued that the portion of the staff report stating that the expanded framing had been done only after the framing inspection was "incorrect," and even offered a "dated photo" purporting to demonstrate the expanded framing actually predated the framing inspection.[2] Ciraulo also offered to have witnesses "come forth and state under oath, if necessary, that ... that structure was first constructed in May."
The Ciraulos also argued that their situation was unique because they were innocent of any wrongdoing, and had expressly asked their contractor, "who they thought was a good contractor" if he had gone to the City for approval of the expansion of the roof structure. He told them "not to worry about it." He also assured them later that it had "passed inspection."[3]
*520 The planning commission unanimously denied the variance on May 22, 2003. While expressing sympathy for the Ciraulos, the commissioners stated they simply had no authority to grant a variance, as the Ciraulos could not meet any of the standards required to justify one. Had the Ciraulos sought the variance before construction began, it would certainly have been denied, and the fact they proceeded with the construction in the absence of that permission simply could not be viewed as a factor in their favor. As one of the commissioners expressed it, "we really need to send a message that no one should be encouraged to do this and then to come in later and ask for forgiveness essentially instead of asking for permission up front."
The Ciraulos appealed that decision to the city council, which set the matter for hearing on June 24, 2003. In connection with that appeal, the planning department staff issued another report, this time to the city council. Similar to the report generated to the planning commission hearing, the city council staff report said, "The framing of the unpermitted improvements on the third level was done after the initial framing inspections that were conducted in early May of 2002."
Additionally, an attached memo indicated that the inspsctor who had approved the roof framing on May 1, 2002, had expressly confirmed that the dimensions of the elevator shaft framing were in accordance with the building plans at the time of that inspection.
At the hearing before the city council, this contention was again addressed. The building director presented a chronological listing of the events during construction. He noted that "[t]he initial inspections were normal and everything conformed to the plans." He explained that the framing inspector did not notice the alteration in the rooftop structure, because "the framing was done per the approved plans."
By contrast, the Ciraulos contended the City "should have found out about the problem on May 1,2002, when the framing and building height inspection was conducted and approved." They emphasized that the framing was never changed, that there had been no "deception" and that they "had pictures to prove this." The Ciraulos acknowledged that while they had never sought a permit for the expanded roof structure, they had had asked their contractor to do so. He, in turn, had assured them "everything was okay." The Ciraulos asserted that they had always acted in "good faith," and that the grant of a variance should be "an issue of equity and fairness, and a balance of hardships." When asked whether the contractor's misconduct should be the responsibility of the City or the property owner, the Ciraulos suggested that in this case, the City had reason to know this particular contractor's "reputation," and thus should have been paying closer attention.
At the conclusion of the hearing the city council voted unanimously to deny the variance. Again, there was sympathy expressed for the Ciraulos, and a suggestion that although they had acted in good faith, they had been `victimized, to a degree" by their contractor. However, the council agreed there were no grounds to justify the grant of a variance.
The City sent letters to the Ciraulos on June 26, 2003, notifying them of the City's denial of their requested variance, and informing them that "the City Attorney's office will be contacting you separately to discuss options." Then, on June 30, 2003, the city attorney sent them another letter, reiterating the fact of the denial, and advising them that "section 1094.6 provides the time within which judicial review must be sought of this decision."
*521 On September 22, 2003, the Ciraulos sought that judicial review by filing a petition for writ of mandate. Four days later, on September 26, 2003, they served that petition on the City. The City responded with a "motion for judgment on the pleadings," arguing that the Ciraulos were obligated, pursuant to Government Code section 65009, to both file and serve their petition within 90 days of the date the City rendered its decision on the variance. Although the City conceded the Ciraulos' filing of their petition had been timely under that rule, it argued their service of it had not.
The Ciraulos opposed the motion, arguing the City had expressly represented to them that their time for proceeding on the mandate petition was governed by section 1094.5. After some obvious struggle, the court denied the motion.
The Ciraulos then filed a motion seeking the right to take "limited discovery" to assist them in proving their claim that the City should be precluded from denying their requested variance, based upon the concept of estoppel, as well as on evidence that City employees had engaged in intentional misconduct in connection with the administrative proceeding. What the Ciraulos sought to do was take the deposition of the building inspector who had conducted the May 1, 2002 "rooftop framing and building height" inspection. The Ciraulos contended that, contrary to the representation made by that inspector in connection with the administrative proceedings, the rooftop structure actually had been in its expanded form when that inspection occurred. The Ciraulos contended that based upon that altered state of facts, the City should be held responsible for having approved the expanded structure on that date, and consequently estopped from denying the Ciraulos' post hoc variance request.
The Ciraulos also claimed the additional discovery was necessary to establish an estoppel based upon the fact the City was at all times aware the general contractor they hired actually had a history of making unauthorized modifications to approved construction plans, similar to the modification in this case. The Ciraulos believed that proof of such knowledge would be sufficient to establish the City should have undertaken more significant efforts to ensure he was not attempting to do so in this case.
The Ciraulos' allegation of "agency misconduct" was related to their first estoppel claim, and based upon the assertion the framing inspector was actually ordered by his supervisor to he to the city council, in order to cover up the fact he had initially inspected and approved the framing of the expanded structure. The Ciraulos claimed they were not made aware of this conspiracy until days after the city council had issued its decision, and thus had no opportunity to raise it at the hearing. The court denied the motion requesting limited discovery.
Thereafter, both parties submitted trial briefs, as well as the administrative record, and the court heard brief oral arguments during its morning session on October 4, 2004. At the close of arguments, the court took the matter under submission, telling the parties it intended to reach its decision quickly. Neither party requested a statement of decision.
The next day, the court issued a fourpage order, explaining its reasoning in denying the writ. The court explained it found no error in the City's evaluation of the factors necessary to justify a variance: "The evidence in the record supports the denial of the request...." In rejecting the Ciraulos' estoppel argument, the court explained: "The factors which contribute to the finding of an estoppel are not present *522 here...." In that regard, the court specifically noted that although "the evidence suggests that the City's approval was based on a structure built to the plans," the "plaintiffs admit they knew that the structure was not built as approved, relying upon the contractor." The court concluded that such a state of facts could not support an estoppel against the City, as "the party seeking to raise an estoppel against the government [must somehow have] changed his position in reasonable reliance on government representations or conduct."
The Ciraulos filed several objections to the court's order, claiming the court failed to make certain essential findings. The court issued a minute order overruling most of the objections, while also concluding the Ciraulos were not, in any event, entitled to a statement of decision.

I
The first issue raised by the City is whether the Ciraulos failed to timely serve their writ petition, in accordance with Government Code section 65009. The issue of whether that statute, which includes a specific stricture as to the date of service, rather than the mere filing limitation contained in section 1094.6, should be applied to this case is rife with complexity. Luckily, we need not tarry in it.
Section 1094.6, subdivision (f), expressly requires the City to give the Ciraulos notice that their time for filing a petition writ of mandate is governed by that statute: "[i]n making a final decision ... the local agency shall provide notice to the party that the time within which judicial review must be sought is governed by this section." (Ibid.)
However, as, subdivision (g) of section. 1094.6 specifies that its basic limitations provision can be overridden by any "conflicting provision" of "state or federal law which provides a shorter statute of limitations," that required notice is also deemed to constitute notice of such other provisionsincluding Government Code section 65009. (Honig v. San Francisco Planning Dept. (2005) 127 Cal.App.4th 520, 531, 25 Cal.Rptr.3d 649.)
Thus, the Ciraulos were deemed to be on notice that they might be bound by the more restrictive service provision of Government Code section 65009, even though that limitation is not expressly mentioned in either the notice they were given, or in section 1094.6 itself.
But the Ciraulos' petition counts as timely under either statute, because the time within which the mandate petition must be pursued is tolled until such time as the mandatory section 1094.6 notice is given. (El Dorado Palm Springs, Ltd. v. Rent Review Com. (1991) 230 Cal.App.3d 335, 345-346, 281 Cal.Rptr. 327; see also Cummings v. City of Vernon (1989) 214 Cal.App.3d 919, 263 Cal.Rptr. 97 [concluding the agency's order was simply not "final" until the required notice was rendered].)
The City did not give the Ciraulos the written section 1094.6 notice until June 30, 2003, six days after it rendered its decision denying their variance application. The Ciraulos both filed, and served their writ petition within 90 days of that date. Consequently, the petition was timely under either statute.

II
We turn to the merits. The Ciraulos first contend the trial court abused its discretion, in refusing to allow them the opportunity to take discovery in connection with their collateral claim of estoppel, because the "claims of estoppel ... were not, and could not reasonably have been, part *523 of the administrative record." There are several problems with this contention.
First, to the extent that is true at all, it is true in only the most technical sense. The "claim of estoppel" was not before the Citythe City being incapable of ordering itself "estopped"but the basic factual dispute regarding the creation of the unpermitted rooftop expansion, including whether the structure was originally framed in accordance with the approved plans, and the altered only after the framing inspection, certainly was a hotly-contested issue.
The record is clear that the Ciraulos were aware, prior to the city council hearing, that the inspector had taken the position they changed the elevator structure only after he had approved the initial framing on May 1, 2002. They argued vehemently, during the both the planning commission hearing and the hearing before the city council, that the rooftop structure had been built only once, and that its framing had been initially inspected, and approved, in its expanded form. They offered evidence to establish the validity of their version of those facts, and there is no indication they were denied the opportunity to offer more. They cannot claim surprise.
Second, the legal support for the Ciraulos' discovery request is thin, at best, and does not seem to support the allowance of discovery in this case. Pomona Valley Hospital Medical Center v. Superior Court (1997) 55 Cal.App.4th 93, 63 Cal.Rptr.2d 743 is the case the Ciraulos rely upon primarily in support of their discovery right. In that case, the appellate court actually reversed a trial court decision allowing the petitioner to take the deposition of someone who was alleged to have instigated the administrative proceeding because of bias against the petitioner certainly shaky ground on which to construct an argument that additional discovery should have been granted.
In explaining its decision, the Pomona Valley court acknowledged that "[although there is no express provision allowing discovery in an administrative mandamus proceeding, section 1094.5, subdivision (e) has been interpreted to allow limited posthearing discovery provided the moving party shows that such discovery is reasonably calculated to lead to evidence admissible under section 1094.5." (Pomona Valley Hospital Medical Center v. Superior Court, supra, 55 Cal.App.4th at p. 102, 63 Cal.Rptr.2d 743.) That covers a very limited scope. "The stringent requirements set forth in section 1094.5, subdivision (e) require the moving party to identify what evidence is sought to be discovered for purposes of adding it to the record; to establish the relevancy of the evidence; and to show that either (a) any such relevant, additional evidence was improperly excluded at the administrative hearing, or (b) it could not have been produced at the hearing with the exercise of reasonable diligence. (§ 1094.5, subd. (e).) If the moving party fails to make the required showing, it is an abuse of the court's discretion to allow posthearing discovery." (Ibid.)
Applying that test, the Pomona Valley court concluded the petitioner failed to show sufficient justification for the deposition. It noted that the bias had been raised and argued during the administrative hearing, and that the "motivations" of the individual who initiated the charges against the petitioner were not strictly relevant. What was relevant was that petitioner was given a fair hearing.
This case is indistinguishable from Pomona Valley. The Ciraulos got a fair hearing at the administrative level regarding their variance request. They had an *524 opportunity to explain the circumstances surrounding the expansion of their rooftop structure, and to offer whatever evidence they wanted. Admittedly, they would not have had the opportunity to take the inspector's, depositionwhich is what they were seeking in the trial courtbut that is of no significance. The mere fact that fullblown discovery rights are not accorded in connection with an administrative proceeding cannot be used to justify the exercise of such rights in the post-hearing mandate proceeding. Nor can the Ciraulos show that relevant evidence was improperly excluded (it was not) or that it could not have been produced with reasonable diligence (it could have).
Moreover, the evidence the Ciraulos sought to develop, relating to their contention that the City's initial framing inspector did view the expanded rooftop structure and later lied about it, is simply irrelevant. Even assuming that to be true, it would not entitle them to equitable relief on a theory of estoppel.
While it is clear the Ciraulos view themselves as innocent victims in this caseand indeed, for all we know, they areit would appear the one who victimized them was their contractor, not the City. Apparently, the Ciraulos delegated the responsibility for ensuring the rooftop expansion was properly approved to the contractor. He gave them the impression he would take care of it, and they relied upon him to do it. This entire mess was created not because the Ciraulos relied upon the City's inspections as indicating approval for the expansion, but because they relied upon their contractor to actually obtain that approval.
Significantly, no one contends the contractor was unaware the expansion was not properly approved, or that he was otherwise "mistaken" about what was.going on. And, no one contends the contractor himself was misled by anything the City's inspectors did, or that he reasonably believed the various inspectors were authorized to, in effect grant a "permit" for structural changes which violated/the city codes. Because the contractor was the Ciraulos' agent, his knowledge (and misconduct) is legally attributable to them. (Civ.Code, § 2338; Powell v. Goldsmith (1984) 152 Cal.App.3d 746, 750, 199 Cal. Rptr. 554.) The fact the Ciraulos themselves were* in effect, victimized by his misconduct is of no moment. "Appellants state they relied completely on `the honesty and integrity' of [their agent]. Their reliance and trust was misplaced A principal cannot benefit from the fraud of its agent who is acting in the course and scope of his agency" (Id. at p. 751, 199 Cal.Rptr. 554, italics added.)
Nothing the City's inspectors are alleged to have done cancels or vitiates the misconduct of the Ciraulos' contractor. At worst, if we assume one or more of the inspectors intentionally allowed the Ciraulos' contractor to proceed with what he knew was an unpermitted expansion of the rooftop structure, those inspectors would be guilty of merely trying to help the contractor (and hence the Ciraulos) cheat the system. It would be impossible to conclude such conduct could be relied upon to aid the Ciraulos' case.
"The [estoppel] doctrine acts defensively only. It operates to prevent one from taking unfair advantage of another but not to give an unfair advantage to one seeking to invoke the doctrine. (In re Marriage of Umphrey (1990) 218 Cal. App.3d 647, 658 [267 Cal.Rptr. 218],)" (In re Marriage of Thompson (1996) 41 Cal. App.4th 1049, 1061, 48 Cal.Rptr.2d 882, italics added.)
In this case, the Ciraulos are, whether they realize it or not, attempting to spin *525 their own misconductthe fact they expanded their rooftop structure without first obtaining the required varianceinto a justification for retaining that structure. That would amount to an "unfair advantage," because, as the City made clear during the underlying administrative proceeding, the Ciraulos would never have been given that variance if they had asked for it in advance. Their claim of equitable estoppel thus fails as a matter of law, based upon their own undisputed misconduct.[4]
Consequently, the facts the Ciraulos sought to develop in discovery, relating to the alleged conduct of the City's inspectors, are simply irrelevant. The court certainly did not abuse its discretion in denying them the opportunity to take that discovery.

III
The Ciraulos' final contention is that the court erred in failing to provide an adequate statement of decision. We conclude they waived their right to have one at all. We start with section 632, which governs the right to a statement of decision. That statute provides, in pertinent part that if "the trial is concluded within one calendar day or in less than eight hours over more than one day ... the request [for statement of decision] must be made prior to the submission of the matter for decision."
In this case, the hearing on the Ciraulos' mandate petition occupied significantly less than a single day. The entire hearing, which is recorded in a mere 30 pages of reporter's transcript, occupied only a portion of the court's morning session. At first blush, then, it would seem clear the Ciraulos were required to request the statement of decision at the time the court took the matter under submission.
However, the Ciraulos contend the analysis is not so simple. Citing Bevli v. Brisco (1985) 165 Cal.App.3d 812, 212 Cal.Rptr. 36, a case very similar to this one, they argue that when the trial court is considering a writ of mandate challenging an administrative decision, the length of the "trial" must be calculated to include the time spent by the court in considering the evidence submitted. Indeed, as the Bevli court points out, the actual hearing time in such cases is generally fairly short, and consists primarily of argument. What actually occupies the bulk of the court's time is its consideration of the evidence submittedi.e., the administrative recordand thus the Bevli court concludes the time spent by the court reviewing that evidence should be included in the calculation of the trial's "length."
While we are dubious about the Bevli calculation, we need not decide whether we agree with it, as the case is distinguishable. In Bevli, the trial court had expressly stated that it spent some 15 hours reviewing the administrative record, over a period of two days. The appellate court concluded that such an expenditure of time simply could not be reconciled with the concept of a "one-day" trial.
*526 In this case, by contrast, we have no direct evidence of how long the court spent reviewing the record. The Ciraulos contend, without citation to the record, that the court stated it had spent "hours of {its] own time" reviewing the record, but that statement, even if true, does not foreclose the possibility that the number of those "hours" was less than eight. Given the brevity of the hearing itself, we could not say the overall amount of time spent by the court in reviewing the evidence and hearing argument necessarily exceeded either eight hours or what could reasonably be described as one day, even if we adopted the Bevli approach.
Because we are obligated to construe the record, whenever possible, in the manner most favorable to the court's decision, we must presume that the length of the trial in this case, even including the time spent by the court in reviewing the record, was less than eight hours. As such, the Ciraulos were required to make their request for a statement of decision at the time the case was submitted. Having failed to do so, they waived their right to have one.
In any event, we would not agree the court's rather lengthy order denying the mandate petition was insufficient to qualify as a statement of decision. In its order, the court found both that there was sufficient evidence in the record to support the City's denial of the variance, and that the Ciraulos could not prevail on an estoppel theory. In connection with the latter conclusion, the court specifically noted the Ciraulos "admit they knew that the structure was not built as approved, relying upon the contractor," and that the known facts could not support an estoppel against the City, as "the party seeking to raise an estoppel against the government [must somehow have] changed his position in reasonable reliance on governmental representations or conduct"
We find the court's explanation quite clear, and entirely consistent with our own conclusion. The Ciraulos' asserted reliance on their contractor to handle the permitting issue on their behalf, and the imputation of his knowledge of the subject to them, simply dooms their estoppel claim. Because their contractor undoubtedly knew that the expanded rooftop structure was not properly approved, and understood that the repeated failures of city inspectors to note the problem did not amount to such approval, the Ciraulos simply do not qualify as innocent parties vis-à-vis the City.
As to the court's resolution of their specific objections to the content of the court's order, we find no error. The court answered the questions raised in the requested findings numbered 2 and 5, and properly refused to address numbers 1, 3, 4 and 6, each of which was irrelevant to the court's decision.
This is a case in which the old Latin maxim, "Est facilius rogare veniam quam permissionem" does not obtain. The judgment is affirmed. The City is entitled to recover its costs on appeal.
WE CONCUR: O'LEARY and IKOLA, JJ.
NOTES
[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.
[2] The photograph, however, did nothing to establish that fact. The Ciraulos represented to the planning commission, that the photo was taken on May 23, 2002which was just over three weeks after the May 1, 2002 framing inspection.
[3] In response to this particular plea, one of the commissioners specifically advised the Ciraulos to "consider your options" and "potential actions against your contractor." He was assured that they were doing that.
[4] Anderson v. City of La Mesa (1981) 118 Cal.App.3d 657, 173 Cal.Rptr. 572, is the case relied upon by the Ciraulos to demonstrate how estoppel can be used to compel a city to issue a variance. But that case is clearly distinguishable from this one. In Anderson, the homeowner was entirely innocent, and built her home in accordance with the permit issued by the City. Only after the construction had been completed (and inspected several times) did the City inform her that the setbacks specified in her permitwhich she had fully complied withwere incorrect, and ordered her to move one side of her house three feet back. Under those circumstances, it's hardly surprising that the courts ordered the City to grant her a variance.