Filed 6/15/23  Torricellas v. Cal. Dept. of Corrections & Rehabilitation CA4/2

See Concurring and Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THERESA TORRICELLAS, | |
| Plaintiff and Appellant, | E075182 |
| v. | (Super.Ct.No. RIC1509979) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag, Judge.

Reversed and remanded with directions.

Theresa Torricellas, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Monica N. Anderson, Senior Assistant Attorney General, and Misha D. Igra and Martha Ehlenbach, Deputy Attorneys General, for Defendant and Respondent.

1

Theresa Torricellas is a prison inmate, serving a sentence for second degree murder of 16 years to life. She alleges that prison staff members placed three false reports — "chronos" — in her file, and that this caused her to be denied parole. She also alleges that, when she made requests to amend the chronos pursuant to the Information Practices Act of 1977 (IPA) (Civ. Code, § 1798 et seq.),[1] the Department failed to handle the requests in conformity with the IPA. Based on these allegations, she filed this action against the Department of Corrections and Rehabilitation (Department) and the individual staff members.

Torricellas is in propria persona. When the Department filed a demurrer to her tort claims, she asked the trial court to appoint counsel for her. It refused. It then sustained the demurrer, leaving only Torricellas's IPA claims. After a bench trial, at which Torricellas appeared via video, the trial court issued a statement of decision denying her any relief under the IPA and, alternatively, finding that the issues were moot.

Torricellas appeals, contending:

(1) The action is not moot.

(2) The trial court abused its discretion by denying Torricellas's request for counsel because it did not consider all of the relevant factors.

(3) The trial court erred by ruling that the chronos had not caused any "adverse" "determination" within the meaning of the IPA.

---

[1]    All further statutory references are to the Civil Code, unless otherwise specified.

(4) The trial court erred by ruling that the chronos would not have any "adverse effect" within the meaning of the IPA.

(5) The trial court erred by ruling that the Department's grievance procedure — which an inmate is required to use to seek review of the denial of an IPA request to amend — is consistent with the IPA.

(6) The trial court erred by failing to find whether Torricellas's grievances challenging the denial of her IPA requests to amend were improperly rejected.

(7) The trial court's statement of decision was defective.

We will hold that the action is not moot.

In a previous appeal by Torricellas involving other defendants, we held that the trial court abused its discretion in denying her request for counsel. We will adhere to this holding. However, we cannot say that she was entitled to counsel as a matter of law. Rather, we will direct the trial court to reconsider the request on remand.

We will also hold that the trial court correctly ruled that the chronos had not caused any "adverse determination"; whether they had any "adverse effect" was irrelevant.

Next, we will hold that the Department's grievance procedure is inconsistent with the IPA, because it does not require a final determination on a grievance within 60 days, but that Torricellas does not have standing to obtain an injunction on this ground.

Finally, we will hold that the Department improperly rejected at least two of Torricellas's grievances; the trial court erred by failing to make such a finding or to take

3

that fact into account in deciding whether the Department's grievance procedure is consistent with the IPA. In all other respects, however, the trial court's statement of decision was not defective.

I

STATEMENT OF FACTS

Torricellas is an inmate at the California Institution for Women, a prison operated by the Department. As of 2014, she worked as a tutor at the prison library.

Phyllis Burkhardt and Pamela Dixson-Stamps were employees of the Department. Burkhardt was a college coordinator; Dixson-Stamps was an appeals coordinator.

On May 20, 2014, Burkhardt filed a chrono about Torricellas.[2] It alleged that Torricellas had been "rude," "harsh," and "disrespectful" to another inmate who was seeking a textbook for a college class. When Burkhardt confronted her, Torricellas was "aggressive[]." Torricellas raised her voice and accused Burkhardt of harassing her and trying to "mess with" her effort to obtain parole. In the chrono, Burkhardt asked that Torricellas be removed from her position.

---

[2] A chrono is a memo to an inmate's file to memorialize information about the inmate, "which . . . may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters." (Cal. Code Regs., tit. 15, § 3000.) There are multiple types of chronos, each with its own CDC form number. (See Cal. Code Regs., tit. 15, §§ 3000 [general chrono], 3213, subd. (e) [custodial counseling chrono], 3287, subd. (c)(6) [medical, psychiatric, dental chrono], 3375, subd. (g) [classification chrono].)

On July 14, 2014, Burkhardt filed a second chrono about Torricellas. It alleged that Torricellas "has consistently exhibited aggressive and callous behavior to staff and other inmates seeking assistance . . . . On numerous occasions I have counseled this inmate concerning her behavior to no avail." Once again, Burkhardt asked that Torricellas be removed from her position.

On September 22, 2014, Dixson-Stamps filed a third chrono about Torricellas. It alleged that Torricellas had misused the inmate grievance procedure, including by failing to follow instructions, filing extraneous documents, and filing "derogatory and slanderous statements" about prison staff. When "counsel[ed]," Torricellas was "unreceptive" and "became verbally combative." She said "she will continue to do things her way, as she does not agree with the current policies."

Torricellas challenged the chronos via a series of three procedural vehicles.

First, she filed a grievance as to each of the chronos.[3] The Department rejected each of these grievances for procedural reasons.

Next, she filed requests to amend the chronos pursuant to the IPA. As to the first two chronos, the Department failed to respond to the request; it rejected the request as to

---

[3]     An inmate has the right to file "a written grievance . . . to dispute a policy, decision, action, condition, or omission by the department or departmental staff." An inmate also has the right to file an appeal from the denial of a grievance. (Cal. Code Regs., tit. 15, § 3481, subd. (a).)

A grievance is sometimes also called an appeal. However, a grievance, unlike an appeal, does not necessarily challenge any earlier ruling or adjudication. Also, a grievance itself can be appealed. To avoid confusion, we will stick with the term grievance.

the third.  Torricellas appealed by filing grievances.  Again, the Department rejected each of these grievances for procedural reasons.

Finally, Torricellas filed written responses to all three chronos.  At the time, however, these responses were not placed in her file.

On August 21 and October 2, 2014, Torricellas had a parole hearing.  The panel had access to her entire file.  It expressly considered, among other evidence, the first two chronos.  Although Torricellas's written responses were not (yet) in her file, she submitted them to the panel.  In addition, she testified that the chronos were false, and she introduced a declaration of an inmate eyewitness disputing the truth of the first chrono.

On October 2, 2014, the Board of Parole Hearings (Board) denied Torricellas parole for an additional 15 years.

In January 2015, the parole denial was vacated.

In December 2016, Torricellas had a second parole hearing.  Although the outcome is not in the record, evidently she was once again denied parole.  She does not claim that this decision was based on the chronos.

In January 2017, in response to this litigation, on the advice of counsel, the Department placed Torricellas's written responses to the three chronos in her file.

II

STATEMENT OF THE CASE

In August 2015, Torricellas filed this action against the Department, Burkhardt, and Dixson-Stamps.

She alleged that, on three occasions, the individual defendants wrote and filed false and derogatory chronos about her. As a result of the chronos, the Board denied her parole. Pursuant to the IPA, she made requests to amend the chronos; the Department erroneously denied (or failed to respond to) them. Her appeals from these denials were erroneously rejected. Finally, she alleged that the Department's procedures for making an IPA request to amend and for seeking review of the denial of a request were inconsistent with the IPA.

As to each of the three chronos, she asserted causes of action for violation of the IPA, defamation, and false-light invasion of privacy; as to two of the three, she asserted causes of action for intentional infliction of emotional distress. She sought damages and injunctive relief.

The trial court sustained a demurrer as to the tort claims; it also sustained a demurrer as to the IPA claims against the individual defendants. It then granted a motion for summary judgment as to the claims for money damages. (See Gov. Code, § 844.6, subd. (a) [governmental immunity to claims for injury to prisoner].)

That left pending only Torricellas's claims for injunctive relief on her IPA causes of action. Specifically, she was seeking: (1) redaction or removal of the three chronos

7

from the Department's files; (2) removal of any documents "'responsive' to," "'related' to or referencing" the chronos; (3) an order that the Department "establish a new regulation and procedures by which a prisoner can obtain . . . review" in conformity with the IPA; and (4) an order that the Department establish a "procedure for screening . . . chronos for false, unreliable, or subjective allegations."

Before trial, the trial court sua sponte issued an order to show cause why the case was not moot, because Torricellas's written responses "are now in the file[,] . . . the first parole hearing was stricken, and there was a subsequent parole hearing . . . ." The parties filed briefs on the mootness issue. However, the trial court decided to "table" the mootness issue and resolve it at trial.

In September 2019, the trial court held a bench trial. Torricellas appeared via video. In October 2019, it issued a proposed statement of decision.

It rejected Torricellas's IPA claims regarding the chronos to the extent that they were based on section 1798.45, subdivision (b). That subdivision requires that an assertedly inaccurate record must be the proximate cause of an adverse determination. The trial court found that the chronos had not caused the denial of parole.

It also rejected Torricellas's IPA claims regarding the chronos to the extent that they were based on section 1798.45, subdivision (c). That subdivision requires a failure to comply with the IPA "in such a way as to have an adverse effect on an individual." The trial court found no evidence that the written responses that had been placed in her file would be inadequate to prevent future adverse effects.

8

Alternatively, it ruled, more broadly, that "the issues" were moot, because Torricellas's only remedy under the IPA was to have a statement of disagreement placed in her file, and this had been done.

Finally, it ruled that the Department's grievance procedure was not inconsistent with the IPA.

Torricellas filed objections to the proposed statement of decision. The trial court amended the statement of decision in one minor respect; otherwise, it overruled the objections. In January 2020, it entered a judgment of dismissal.

III

THE INFORMATION PRACTICES ACT

The IPA requires most state agencies (see § 1798.3, subd. (b)) to "maintain all records, to the maximum extent possible, with accuracy, relevance, timeliness, and completeness," but only "when such records are used to make any determination about [an] individual." (§ 1798.18.)

An individual can request the amendment of "a record which the individual believes is not accurate, relevant, timely, or complete." (§ 1798.35.) Within 30 days after a request, the agency must either make the amendment or else tell the individual why it is refusing and how the individual can request review of the refusal. (*Ibid.*)

The review must be conducted by the head of the agency or his or her delegate. (§§ 1798.35, 1798.36.) The agency must complete its review within 30 days, except that the head of the agency can extend that time by another 30 days. (§ 1798.36.) "If, after

9

such review, the reviewing official refuses to amend the record in accordance with the request, the agency shall permit the individual to file with the agency a statement . . . setting forth the reasons for the individual's disagreement." (*Ibid.*) Thereafter, whenever the agency discloses any of the disputed information, it must also disclose the individual's statement of disagreement. (§ 1798.37.)

"An individual may bring a civil action against an agency whenever such agency does any of the following:  [¶]  . . .

"(b)  Fails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual.

"(c)  Fails to comply with any other provision of [the IPA], or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." (§ 1798.45.)

The relief available in such an action includes an injunction against "any practices which violate [the IPA]." (§ 1798.47.)

State agencies must adopt procedural regulations or guidelines to implement the IPA. (§ 1798.30.) Here, the Department's IPA regulation (Cal. Code Regs., tit. 15, § 3450) allows "[a]ny person on whom the department maintains a record or file containing personal information . . . to request amendment to correct outdated, inaccurate

10

or incomplete information." (*Id.*, subd. (a).) "Requests to amend a record or file shall be submitted in writing, including documentary evidence to support the proposed amendment . . . ." (*Id.*, subd. (a)(2).) "Inmates . . . may appeal the denial of a request using the inmate/parolee [grievance] process . . . ." (*Id.*, subd. (b).) "When an individual's appeal of the request decision is denied, they may submit . . . a statement of disagreement for placement in the record or file." (*Id.*, subd. (c).)

IV

MOOTNESS

Torricellas contends that the trial court erred by ruling that "the issues" were moot. The trial court reasoned that the IPA does not authorize a court to require an agency to amend a record, and therefore her only remedy was to have a statement of disagreement placed in her file.[4] The Department responds that the trial court was correct, but it provides no reasoned argument in support.

We begin with the plain language of the IPA. It requires an agency to maintain "records . . . used to make any determination about [an] individual" "with accuracy, relevance, timeliness, and completeness." (§ 1798.18.) It allows an individual to bring a civil action against an agency "whenever" the agency "[f]ails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as

---

[4]    Given the reasons for this ruling, it applied only to Torricellas's claims regarding the accuracy of the chronos; it did not apply to her claims regarding the validity of the grievance procedures. The trial court went on to reject the latter claims on the merits. We conclude that it did not intend to rule that these latter claims were moot.

11

is necessary to assure fairness in any determination . . . if, as a proximate result of such failure, a determination is made which is adverse to the individual." (§ 1798.45, subd. (b).) It then provides that "[a]ny agency that fails to comply with any provision of this chapter may be enjoined . . . . The court may make any order or judgment as may be necessary to prevent the use or employment by an agency of any practices which violate this chapter." (§ 1798.47.)

Significantly, the IPA also provides: "The rights and remedies set forth in this chapter shall be deemed to be nonexclusive . . . ." (§ 1798.49.)

These provisions make no express exception for an individual who has filed a statement of disagreement. Contrariwise, the provision allowing an individual to file a statement of disagreement does not expressly provide that an individual who does so cannot file a civil action for amendment.

The trial court evidently reasoned that such an exception is implied: Why would the IPA allow an individual to go through the elaborate and time-consuming request-for-amendment/statement-of-disagreement procedure if the same individual could skip that procedure and just go straight to filing a civil action? And, once an individual has gone through that procedure, why would the IPA allow the same individual to file a civil action?

The answer becomes apparent when we look at the background of the IPA.

"Many of the IPA's approaches to regulating agency information practices are similar to those of the Federal Privacy Act, and the language of the IPA is in several

12

instances identical to the federal act. [Citation.]" (Hancock, *California's Privacy Act: Controlling Government's Use of Information?* (1980) 32 Stan.L.Rev. 1001, 1038, fn. 6.)

Like the IPA, the federal Privacy Act (5 U.S.C. § 552a) requires an agency's records that are used to make a determination regarding an individual to be accurate, relevant, timely, and complete. (5 U.S.C. § 552a(e)(5).) Also like the IPA, it allows an individual to request amendment of a record. (5 U.S.C. § 552a(d)(2).) If such a request is denied, it allows the individual to request a review by the agency. (5 U.S.C. § 552a(d)(3).) Finally, if the agency still refuses to amend the record after a review, it requires the agency to allow the individual to file a statement of disagreement. (*Ibid*.)

Unlike the IPA, however, the federal Privacy Act expressly allows an individual to bring a civil action for judicial review of an agency's refusal to amend. (5 U.S.C. § 552a(g)(1)(A); see also 5 U.S.C. § 552a(d)(3).) In such an action, "the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct." (5 U.S.C. § 552a(g)(2)(A).)[5]

The federal courts have held that the request-to-amend procedure is an administrative remedy. An individual must exhaust this remedy — i.e., must request amendment and, if amendment is denied, must request review — before asking a court to

---

[5] The IPA, enacted in 1977, was necessarily based on the federal Privacy Act as it then stood. The federal Privacy Act has been amended repeatedly since then. However, these particular provisions remain essentially unchanged. (See 5 U.S.C. former § 552a, Pub.L. 93-579, § 3 (Dec. 31, 1974), 88 Stat. 1897.)

order the amendment of a record.[6] (*Quinn v. Stone* (3d Cir. 1992) 978 F.2d 126, 137; *Dickson v. Office of Personnel Management* (D.C. Cir. 1987) 828 F.2d 32, 40; *Diliberti v. United States* (7th Cir. 1987) 817 F.2d 1259, 1260-1261; *Hewitt v. Grabicki* (9th Cir. 1986) 794 F.2d 1373, 1377-1378.)  "[P]remature review . . . would invade the obligation to make policy judgments committed in the first instance to the record keeping agency. [Citation.]" (*Dickson v. Office of Personnel Management*, *supra*, 828 F.2d at p. 40.) However, this administrative remedy is not exclusive; an individual who has exhausted the procedure and filed a statement of disagreement can still file an action to compel amendment.  (*Vymetalik v. FBI* (D.C. Cir. 1986) 785 F.2d 1090, 1098, fn. 12.)

It could be argued that there is one significant distinction between the IPA and the federal Privacy Act.  As noted, the federal Privacy Act expressly provides for a civil action for judicial review of an agency's denial of a request to amend; it also expressly provides for an injunction requiring the agency to amend the record.  (5 U.S.C. § 552a(g)(1)-(2).)  The IPA has no similar provisions.  Instead, as quoted above, it very generally provides that "[a]ny agency that fails to comply with any provision of this chapter may be enjoined . . . .  The court may make any order or judgment as may be necessary to prevent the use or employment by an agency of any practices which violate this chapter."  (§ 1798.47.)

---

**6**     It does not appear that exhaustion under the federal Privacy Act requires the individual to file a statement of disagreement.

However, this is a distinction without a difference.  We cannot read this *broad* language as *narrowing* a plaintiff's right to sue.  Rather, it appears the Legislature felt that the language it used encompassed, or was even broader than, the federal language.

The legislative history of the IPA supports our conclusion.  The IPA was enacted as Senate Bill No. 170 (1977-1978 Reg. Sess.).  According to the sponsor of the bill, "SB 170 requires an agency to provide a review procedure when an agency refuses to amend information maintained on that individual.  [¶]  . . .  [¶]  . . . *SB 170 permits an individual to initiate a civil action against an agency . . . for failure to amend . . . .*"  (Statement on SB 170 (1977-1978 Reg. Sess.) at p. 9, italics added.)

The trial court expressed concern that "the IPA . . . would be wrongly construed to say that now every single person who disagreed with what a prison counselor wrote about a fight or contraband or something else, that that would allow a lawsuit in that regard."  However, an action will not lie to correct just any old inaccuracy; the inaccuracy must have led to an adverse determination.  Moreover, in many cases, the administrative remedy will resolve the dispute and thus make a civil action unnecessary.

The federal Privacy Act applies to prison records.  (*Perry v. Bureau Of Prisons* (11th Cir. 2004) 371 F.3d 1304, 1304-1305; *Toolasprashad v. Bureau of Prisons* (D.C. Cir. 2002) 286 F.3d 576, 583-586.)  Unlike the IPA, however, it allows law enforcement agencies, including correctional agencies, to exempt themselves from some (though not all) of its provisions.  (5 U.S.C. § 552a(j).)  For example, the federal Bureau of Prisons

15

has exempted particular inmate records from the accuracy and/or the request-to-amend provisions. (28 C.F.R. § 16.97(a), (j), (*l*), (n), (p).)

The drafters of the IPA were aware of the federal Privacy Act. Nevertheless, they did not adopt its provision allowing exemptions. We can only conclude that they intended prison records to be subject to the IPA. If the Department feels that public policy requires inmate records to be exempt from the IPA, it should make that pitch to the Legislature.

We therefore conclude that the request-for-amendment/statement-of-disagreement procedure is not the sole remedy under the IPA for an inaccurate record. An individual who has exhausted that remedy is entitled to file an action for an injunction to amend the record. Hence, Torricellas's claims regarding the accuracy of the chronos are not moot.[7]

V

THE APPOINTMENT OF COUNSEL

Torricellas contends that when the trial court denied her request for appointed counsel, it abused its discretion by failing to consider all of the relevant factors.

---

[7] Torricellas also contends that the trial court erred by ruling that the action was moot, because it had previously denied two motions for summary judgment that were based on mootness. Because we conclude, for other reasons, that the action was not moot, we do not reach this contention.

16

A.      *Additional Factual and Procedural Background.*

      1.      *Torricellas's request for counsel.*

In March 2016, the defendants filed a demurrer. The individual defendants demurred to all causes of action; the Department demurred to all but the IPA causes of action.

On November 16, 2016, Torricellas filed an untimely opposition to the demurrer.[8] In it, she did not oppose the demurrer on the merits; rather, she asked the trial court to appoint counsel for her and to take the demurrer off calendar until her request for counsel could be addressed.

In a declaration, she stated that she was "obstructed [from] meaningful access to the courts by lack of or adequate law library access & numerous lockdowns, modified programs and other scheduling that deny [her] access to research & prepare legal documents for filing in a timely manner." She testified in some detail to the procedures that had interfered with her access. She also stated that she had been unable to file documents because the trial court had improperly denied her requests for fee waivers.

---

[8]      The opposition was served by mail on November 10, 2016. Torricellas was entitled to the benefit of the "prison mailbox" or "prison delivery" rule, under which a document is deemed filed on the date the inmate delivers it to prison authorities. (See *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 123-124; *In re Lambirth* (2016) 5 Cal.App.5th 915, 923-924.) Even so, the deadline for filing an opposition — nine court days before the November 16, 2016 hearing (Code Civ. Proc., § 1005, subd. (b)) — had already run.

      The register of actions suggests that the trial court had already ruled before the opposition was filed.

17

Also on November 16, 2016, the trial court sustained the demurrer, with 90 days' leave to amend. The Department filed an answer to the IPA causes of action.

Torricellas did not file an amended complaint, so the trial court set an order to show cause (OSC) re: dismissal.

In case management statements filed on April 6, 2017, June 5, 2017, and August 9, 2017, Torricellas once again requested the appointment of counsel. She noted that she had been unable to appear at hearings at least three times because the prison had failed or refused to give her telephone access. Again, she complained that she had been unable to file documents because the trial court had improperly denied her requests for fee waivers.

On August 23, 2017, the trial court denied her requests for counsel[9] and dismissed the action as against the individual defendants with prejudice.

### 2. *The first appeal*.

Torricellas filed a notice of appeal from the dismissal of the individual defendants. In July 2019, we issued our opinion in that appeal. (*Torricellas v. Burkhardt* (Jul. 22, 2019, No. E069330) [2019 Cal. App. Unpub. LEXIS 4837] [nonpub. opn.].) We held that the trial court properly sustained the demurrer as to the individual defendants (*id*. at pp. *8-*11) and, when Torricellas failed to amend, it properly dismissed the action as against them. (*Id*. at pp. *11-*15.) Thus, we affirmed.

---

**9** The present record does not show the reason for the denial. However, in a previous appeal (see part V.A.2, *post*), we noted that the request for counsel was denied because "the court did not have the resources to grant the request." (*Torricellas v. Burkhardt* (Jul. 27, 2020, No. E069330) [2020 Cal. App. Unpub. LEXIS 4750 at pp. *8-*9] [nonpub. opn.].)

Torricellas filed a petition for review. In October 2019, the Supreme Court granted the petition and transferred the matter to us "for reconsideration in light of *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197 . . . " (*Yarbrough*). (*Torricellas v. Burkhardt* (Oct. 30, 2019, No. S257541) [2019 Cal. LEXIS 8297 at p. *1].)

*Yarbrough* had held that "[i]n an appropriate case, and as a last alternative, appointment of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts . . . ." (*Yarbrough*, *supra*, 39 Cal.3d at p. 200.) It also prescribed factors that a trial court must consider in ruling on an indigent prisoner's request for the appointment of counsel. (*Id*. at pp. 205-207.) Subsequent cases have extended *Yarbrough* to indigent prisoners who are civil plaintiffs. (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 465-468, and cases cited.)

In July 2020, we issued a new opinion. (*Torricellas v. Burkhardt*, *supra* [2020 Cal. App. Unpub. LEXIS 4750].) We held that, when the trial court denied Torricellas's request for appointed counsel, it abused its discretion by failing to consider all of the relevant factors. (*Id*. at pp. *28-*32.) Therefore, we reversed the dismissal and remanded with directions to determine "(1) whether plaintiff was deprived of her due process right to court access and (2) whether to grant plaintiff's request for court-appointed counsel or order other alternative measures to protect her access to the court while prosecuting her claims against defendants in this case." (*Id*. at pp. *32-*33.)

19

B.    *Discussion*.

The Department was not a party to the previous appeal.  We may assume, without deciding, that our opinion in that appeal therefore is not the law of the case.  (See *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57.)  Nevertheless, we remain convinced that, when the trial court denied Torricellas's request for appointed counsel, it abused its discretion by failing to consider all of the factors that the Supreme Court has instructed us are relevant to such a request.  (See *Yarbrough*, *supra*, 39 Cal.3d at pp. 205-207; see also *Payne v. Superior Court* (1976) 17 Cal.3d 908, 926-927.)  Indeed, the Department does not argue otherwise.  Rather, it argues only that the error is forfeited and/or moot.

First, the Department argues that Torricellas forfeited her contention because she did not request counsel before trial.  However, she did request counsel at the demurrer stage; the trial court denied that request due to lack of resources.  This preserved a contention that she needed counsel in connection with *the demurrer*.

It also preserved a contention that she needed counsel in connection *with trial*.  "'Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile . . . .' [Citation.]" (*People v. Gomez* (2018) 6 Cal.5th 243, 286-287.)  Because the trial court had already denied her request, and because the reason for that denial had not changed, a renewed request would have been futile.

Second, the Department argues that, while this appeal was pending, Torricellas waived her present contention. This argument requires some additional procedural background.

At the Department's request, we have taken judicial notice of the minute order and reporter's transcript from a hearing in the case on September 3, 2021. That was a hearing on remand after the previous appeal. The Department, having obtained a judgment in its favor, was no longer a party. The purpose of the hearing was to resolve Torricellas's claims that she had not been given access to her legal materials.

The trial court asked Torricellas whether she still wanted counsel or whether, on the other hand, she would prefer to represent herself, as long as she had access to her legal materials. At first, she did not give a direct answer. The trial court, however, pressed her, and eventually she agreed that she would prefer to represent herself, as long as she had access to her legal materials.[10]

Accordingly, the trial court ordered that she be allowed access to her legal materials. It concluded: "[P]ursu[ant] to the remittitur, the Court has determined that per Yar[b]rough, plaintiff is not seeking counsel, but seeking accommodations, and plaintiff

---

[10] Specifically, she said, "I really just wanted to do my file — my opposition. I wanted . . . the opportunity to get my opposition filed and heard . . . and participate in the hearing on the demurrer process, which I didn't get. *So I don't feel that I need an attorney for that*. . . . [I]f you didn't want to give me an opportunity to file [an opposition to] the demurrer, . . . then that would be my argument, . . . that as an alternative . . . , then maybe you should appoint counsel . . . ." (Italics added.)

21

is satisfied that these accommodations will allow her to file responses to the legal arguments made by the attorney general's office."

This was a waiver of appointed counsel — but a limited one, in two respects. First, when it was made, the only defendants were the individual defendants; Torricellas has never waived appointed counsel in any action against the Department. Second, when it was made, the only pending issue was the demurrer. Torricellas even indicated that she was waiving appointed counsel solely in the context of the demurrer. She explained that she had been denied an opportunity to participate in "the demurrer process," then concluded, "So I don't feel that I need an attorney *for that*" (italics added) — clearly referring back to "the demurrer process." The trial court merely found that the accommodations it was ordering were sufficient to enable Torricellas "to file responses to the legal arguments made by the attorney general's office," not necessarily to fully try the case.

Third, the Department argues that "the record establishes that Torricellas received appropriate access to court." This is essentially a harmless error argument.

As the Department notes, a prisoner is not absolutely entitled to appointed counsel. (*Payne v. Superior Court*, *supra*, 17 Cal.3d at p. 924.) "[A]ccess — not the right to counsel — is the keystone . . . ." (*Yarbrough*, *supra*, 39 Cal.3d at p. 201.) "Meaningful access to the courts . . . '"does not necessarily mandate a particular remedy" to secure access.' [Citation.] Rather, '[t]he trial court determines the appropriate remedy to secure access in the exercise of its sound discretion.' [Citations.] Case law suggests a laundry

22

list of remedies to provide access in this context, including 'appointment of counsel for the prisoner.' [Citations.] Indeed, appointment of counsel is viewed as the remedy to be considered when other lesser remedies prove inadequate. [Citation.]" (*In re William M.W.* (2019) 43 Cal.App.5th 573, 591.)

A prisoner can be denied appointed counsel and required to represent him or herself, provided that doing so does not deny meaningful access to the courts. Meaningful access requires that the prisoner can competently represent him or herself. Such competence involves not only the ability to spot, raise, and argue legal and factual issues, but also to file documents and to make appearances. (See *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1483; see also *Watts v. Kidman* (7th Cir. 2022) 42 F.4th 755, 760.)[11] "[T]he test is *not* whether 'a good lawyer may have done better than [the plaintiff].' [Citation.] Because if that were the test, '[trial] judges would be required to request counsel for every indigent litigant.' [Citation.]" (*Johnson v. Doughty* (7th Cir. 2006) 433 F.3d 1001, 1006.)

The Department focuses on Torricellas's performance at trial. It notes that she testified, examined witnesses, introduced exhibits, and filed papers. Torricellas retorts that other relevant witnesses and exhibits were excluded. She also claims that she was

---

[11] In federal court, an indigent can request pro bono counsel in a civil action under 28 United States Code section 1915(e)(1). The factors relevant to such a request under federal decisions are also relevant to an indigent prisoner's request for the appointment of counsel under California law. (*Smith v. Ogbuehi*, *supra*, 38 Cal.App.5th at p. 470.)

23

unprepared for trial, she had no plan, and, while she did examine and cross-examine witnesses, she did not do so effectively.

It is hard for us to evaluate these conflicting claims. They require us to compare the trial that took place to a trial that did not. That, in turn, requires us to imagine that Torricellas asked questions, made objections, raised arguments, called witnesses, and introduced exhibits that she never did — the need for which may not be apparent from this record.

We focus instead on Torricellas's performance in pretrial proceedings. She failed to file any opposition to the demurrer on the merits. She did file a request to take the demurrer off calendar, but she filed it too late. Once the demurrer was sustained, she failed to file an amended complaint within 90 days. In support of her requests for counsel, she testified, in some detail, that various prison procedures were preventing her from doing legal research, from filing papers, and from making telephonic appearances. This testimony was uncontradicted.

Her difficulties with fee waivers also deserve discussion.

When she filed her complaint, Torricellas filed a request for an initial fee waiver. The trial court denied it with respect to filing fees, although it granted it in every other respect. Instead, it ruled that she was required to pay the statutory fee of $450 for filing the complaint; however, this could be collected as monthly payments taken from her prison trust account, of up to 20 percent of the balance. Some $260 was duly collected

this way. Then, however, there is a docket notation: "Insufficient filing fee: Final Payment of filing fees . . . in the amount of $190.00."

Meanwhile, Torricellas filed a request to waive additional fees. In it, she asked the trial court to reconsider its denial of a waiver of filing fees. The trial court denied the request because it was not accompanied by a statement of her prison trust account. She continued to file requests for a waiver of filing fees, but the trial court denied them as having been already adjudicated.

In her requests for the appointment of counsel, Torricellas testified that, because her requests for a waiver of filing fees had been denied, she had been unable to file motions, oppositions, and continuance requests.

We cannot say that the trial court erred by denying a waiver of filing fees. Torricellas insists that she was absolutely entitled to a fee waiver. Evidently she is unaware of Government Code section 68635 (even though the trial court cited it in its order denying a filing fee waiver). That section provides that a prisoner must pay filing fees; however, if the prisoner submits a certified "statement of account for any moneys due to the inmate for the six-month period immediately preceding the application," the court can allow the fees to be collected as monthly payments of 20 percent of the prisoner's trust account. Thus, it would seem that Torricellas's requests were denied only because she failed to submit a statement of her prison trust account.[12]

_____

[12] In supplemental briefing, Torricellas claims she did submit a statement of her trust account. However, she provides no citation to the record.

25

On the other hand, we cannot say for certain that this is the case. It is not clear why the trial court stopped attempting to collect payments from Torricellas's trust account. It is also not clear why it ordered that the initial $450 filing fee be collected from her trust account, but not any subsequent filing fees. Moreover, Torricellas argues that, once the trial court granted her initial fee waiver, it was not authorized to demand any subsequent filing fees or any updated prison trust account statements. (See Cal. Rules of Court, rule 3.55.)

Here is the point. There are two possibilities. First, Torricellas may have been at fault, e.g., by failing to submit a trust account statement. If so, that is some evidence that she was not competent to litigate her own case. Second, the trial court may have been at fault, e.g., by erroneously requiring subsequent filing fees and an updated trust account statement. If so, then Torricellas's indigence interfered with her access. Either way, however, Torricellas's inability to obtain a filing fee waiver tended to show that she was denied meaningful access.

We are not holding that Torricellas was absolutely entitled to the appointment of counsel. On remand, the trial court must evaluate, among all of the other factors, Torricellas's current competence to represent herself; it may be much improved since

---

She also cites Government Code section 68635, subdivision (h), which provides: "An inmate shall not be prohibited from filing pleadings or other papers solely because the inmate has no assets and no means to partially pay the initial filing fee." However, she was not prohibited from filing papers because she had no assets; she was not prohibited from filing papers because she did not submit a statement of her prison trust account.

26

2016-2017. Moreover, the trial court may conclude that it can provide meaningful access by means of other procedural vehicles.

We are holding, however, that there is a reasonable probability that, if the trial court had given Torricellas's request for appointed counsel due consideration, it would have granted the request. Hence, we cannot say that its failure to consider all of the relevant factors was harmless.

VI

ADVERSE DETERMINATION

As mentioned, the trial court rejected Torricellas's claims challenging the chronos to the extent that they were made under section 1798.45, subdivision (b), because it found that the chronos were not the proximate cause of the denial of her parole, and also because the parole denial had been vacated. Torricellas contends that both reasons were erroneous.

A.      *Proximate Causation*.

Again, section 1798.45, subdivision (b) permits a civil action based on a failure to maintain accurate records "if, as a proximate result of such failure, a determination is made which is adverse to the individual."

We review the trial court's finding of lack of causation under the substantial evidence standard. (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 132.) That means "'"the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings

below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.' [Citation.]" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.)

The transcript of the parole hearing supports the trial court's finding. The panel gave an extensive statement of reasons. It noted that: (1) Torricellas had an "unstable and tumultuous social history," which included "an extensive substance abuse history"; (2) she had a criminal history including prostitution, drug crimes and violent crimes such as battery; (3) the murder was "cruel," "dispassionate and calculated," and showed "callous disregard for human suffering; (4) a psychologist's report had found "a moderate to high risk of recidivism"; (5) her conduct at the hearing demonstrated a lack of self-control;[13] (6) her testimony at the hearing was "far-fetched," showing that "she [wa]s not to be trusted"; (7) she "lack[ed] understanding" of her crime and was "continuing to minimize her role"; (8) she did not show "remorse or empathy"; (9) "she ha[d] not engaged in meaningful self-help nor programming"; and (10) "she ha[d] not identified nor corrected her deficiencies in character with respect to substance abuse, with respect to anger, with respect to insight, and with respect to conflict resolution."

---

[13] "[S]he was agitated, she was angry, she could not sit still, she moved around, she attempted to get out of her seat, being prompted to be put back in her seat by the officer. She was disruptive, she was disrespectful to the process, and . . . exhibited a level of anger that was highly inappropriate . . . ." "[T]he Panel, to a certain degree, became in fear of the situation."

28

One panel member was concerned that, when asked about why "she seems to find a lot of [conflict]," she responded — "Maybe it finds me. Whatever." He felt this was "dismissive" and showed lack of "self-reflection." Another was concerned that she had repeatedly been "manipulati[ve]."

Admittedly, the panel did consider Torricellas's behavior in prison, as showing "that she has continued to have conflict with peers, . . . that she lacks the tools in conflict resolution, in dealing with other humans civilly." However, her disciplinary history included 27 major incidents ("115s") and 63 minor incidents ("128s"). On this record, it would be absurd to suppose that the three minor incidents shown in the chronos had any effect on the Board's ultimate decision.

According to Torricellas, the panel "specifically cited to ostensible issues based on the [three] chronos . . . ." In the portions of the record that she cites, however, the Board merely said it had "considered the whole record," including all of her 115s and 128s, and had taken into account her behavior in prison. It never specifically cited any of the three chronos at issue.

Torricellas argues that, absent the chronos, even if the Board would still have denied parole, it might have denied it for some time less than 15 years. However, the Board had to deny parole for 15 years, unless it found "by clear and convincing evidence" that a period of 10 years or less was consistent with public safety. (Pen. Code, § 3041.5, subd. (b)(3).) The same analysis applies. In fact, the panel did not find a single positive factor or mitigating circumstance.

29

Finally, Torricellas takes issue with the panel's reasoning.  As the Department points out, however, the only way to seek review of a decision to deny parole is to file a petition for habeas corpus.  (*In re Roberts* (2005) 36 Cal.4th 575, 584.)

B.      *Vacation of the Denial of Parole*.

Separately and alternatively, there was no adverse determination because the denial of parole had been vacated.

In legal parlance, "vacate" means "nullify or cancel; make void; invalidate . . . ." (Black's Law Dict. (11th ed. 2019).)  When something is vacated, it is as if it had never existed.  (E.g., *Strategic Concepts, LLC v. Beverly Hills Unified School Dist.* (2018) 23 Cal.App.5th 163, 165, fn. 2 [unqualified reversal vacates the judgment, leaving the case "'as if no judgment had ever been rendered.'"]; *People v. Murphy* (1980) 108 Cal.App.3d 475, 478 ["The granting of a rehearing . . . has the effect of vacating the previous opinion and puts the case in the same position as if it had never been decided or submitted . . . ."]; *Estate of Edwards* (1972) 25 Cal.App.3d 906, 912 ["The effect of an order vacating a final judgment of divorce is that 'there never has been a dissolution of the marriage.'"].)  Obviously, as a factual matter, it did exist.  As a legal matter, however, it must be regarded as if it did not exist.

Torricellas argues that a future psychologist may rely on the Board's findings, even though they were vacated, and a future Board may, in turn, rely on the psychologist's findings.  This shows, at most, that there may be some adverse

determination in the future. Her claim under section 1798.45, subdivision (b) is not ripe until that occurs.

Torricellas also argues that the denial of parole continues to cause her "mental, emotional, and psychological injury." That is relevant to section 1798.45, subdivision (c), which requires an "adverse effect." (See part VII, *post*.) However, it is irrelevant to section 1798.45, subdivision (b), which requires an "adverse" "determination." There is no longer any such determination.

## VII

## ADVERSE EFFECT

The trial court also rejected Torricellas's claims challenging the chronos to the extent that they were made under section 1798.45, subdivision (c), because it found no evidence that her statements of disagreement would be inadequate to prevent adverse effects. Torricellas contends that this was erroneous.

This assumes that Torricellas could have had a meritorious claim under section 1798.45, subdivision (c), if only she could have shown adverse effects. We disagree. Section 1798.45, subdivision (b) provides a civil action, under certain circumstances, when a state agency has failed to maintain records "with accuracy, relevance, timeliness, and completeness," as section 1798.18 requires. Section 1798.45, subdivision (c) then provides a civil action, under certain circumstances, when an agency "[f]ails to comply with any *other* provision of" the IPA. (Italics added.) Therefore, a claim under section 1798.45, subdivision (c) cannot be based on the maintenance of an inaccurate record in

31

violation of section 1798.18.  A claim based on maintenance of an inaccurate record can be brought only under section 1798.45, subdivision (b).

## VIII

## THE GRIEVANCE PROCEDURE

A regulation of the Department requires that any appeal from the denial of an IPA request to amend must be made using the prison grievance procedure.  (Cal. Code Regs., tit. 15, 3450, subd. (b).)  Torricellas contends that the grievance procedure is inconsistent with the IPA, and therefore the trial court erred by refusing to enjoin this requirement.

A.      *Additional Factual and Procedural Background.*

In her complaint, Torricellas alleged that "the Department['s] . . . regulation for seeking amendment of the record . . . fails to comply . . . with the procedure and time frame set out in the [IPA]."

In her trial brief, she argued that the grievance procedure was "fundamentally incompatible" with the IPA because:

(1)  There was no reasonable probability that a review would be complete within 60 days;

(2)  An inmate was limited to filing one grievance every 14 days, and therefore an inmate with other, non-IPA grievances might be unable to file an IPA grievance; and

(3)  The grievance procedure was arbitrary and capricious — it "allows or permits prison appeals staff to reject or cancel out prisoner appeals for any reason or no reason at all."

32

B.    *Discussion.*

1.    *Applicable law.*

Under the IPA, when an individual makes a request to amend, the agency must "complete such review and make a final determination" within not more than 60 days. (§ 1798.36.)

At the time of trial, the Department's grievance regulations provided for a three-step process:  A first level review, conducted by an appeals coordinator; at the inmate's request, a second level review, conducted by a higher-level staff member; and, again at the inmate's request, a third level review, conducted by an even higher-level staff member.  (Cal. Code Regs., tit. 15, former §§ 3084.1, subd. (b), 3084.2, subds. (c)-(e), 3084.7, subds. (a)-(d), (h).)

At each level, the inmate had 30 days to request review.  (Cal. Code Regs., tit. 15, former § 3084.8, subd. (b).)  The Department had 30 *working* days to render its decision on the first and second levels, and 60 *working* days to render its decision on the third level.  (Cal. Code Regs., tit. 15, former § 3084.8, subd. (c).)

A grievance had to be filed using the Department's Form 602 and, if more space was needed, one Form 602-A attachment.  (Cal. Code Regs., tit. 15, former § 3084.2, subds. (a), (a)(2).)  The inmate also had to submit all available "supporting documents" "necessary for the clarification and/or resolution of the [grievance]."  (Cal. Code Regs., tit. 15, former §§ 3084.2, subds. (b), (b)(1), 3084.3, subds. (a), (b), (c).)  A grievance was limited to "one issue or related set of issues."  (Cal. Code Regs., tit. 15, former § 3084.2,

33

subd. (a)(1).) An inmate could not file more than one nonemergency grievance every 14 days. (Cal. Code Regs., tit. 15, former §§ 3084.1, subd. (f), 3084.4, subd. (a)(1).)

If the inmate violated these rules, the grievance would be rejected. (Cal. Code Regs., tit. 15, former §§ 3084.2, subd. (a)(1), 3084.3, subd. (c), 3084.6, subd. (b).) The inmate could try to cure the violation and resubmit the grievance within 30 days after rejection. (Cal. Code Regs., tit. 15, former § 3084.6, subd. (a)(2).) However, if "[t]he inmate . . . continue[d] to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal including failure to submit necessary supporting documents," the grievance would be canceled. (Cal. Code Regs., tit. 15, former § 3084.6, subd. (c)(3).) The grievance would also be canceled if the inmate exceeded applicable time limits. (Cal. Code Regs., tit. 15, former § 3084.6, subd. (c)(4).) An inmate could not resubmit a canceled grievance, although the inmate could file a new grievance challenging the cancellation. (Cal. Code Regs., tit. 15, former § 3084.6, subd. (e).)

These grievance regulations were repealed and replaced, effective January 5, 2022. (Cal. Code Regs., tit. 15, § 3480, subd. (a).)

The major difference is that the new regulations provide for a two-step process. Now, a decision on the grievance must be rendered within 60 days after receipt of the grievance, "unless other statutory or regulatory authority requires a response in less than 60 calendar days." (Cal. Code Regs., tit. 15, § 3483, subd. (g).) In most cases, an inmate has 60 days to appeal. (Cal. Code Regs., tit. 15, § 3484, subd. (b)(1).) A decision on the

appeal must be rendered within 60 days after receipt, "unless other statutory or regulatory authority requires a response in less than 60 calendar days." (Cal. Code Regs., tit. 15, § 3485, subd. (g).) Also, the limitations of one issue per grievance and one grievance per 14 days no longer apply.

Both sides filed their briefs after the new regulations went into effect. Nevertheless, they cite and discuss only the old regulations. At this point, however, Torricellas's challenge to the old regulations is moot. We consider the challenge, but only as it applies to the new regulations.

### 2. *Additional factual background.*

On October 8, 2014, Torricellas filed a grievance challenging the denial of her IPA requests to amend the first two chronos. On October 16, 2014, the grievance was canceled at the first level, because it had been submitted more than 30 days after the date of the second chrono.[14] Torricellas admits that she did not challenge the cancellation.

On December 17, 2014, Torricellas filed a grievance challenging the denial of her IPA request to amend the third chrono. On January 14, 2015, it was rejected at the first level, because it was not written entirely on the required forms.

Torricellas resubmitted the grievance. It was rejected on February 13, 2015, again because it was not written entirely on the required form, and also because it duplicated her earlier grievance regarding the contents of the chrono.

---

[14] The cancellation also noted that the grievance did not include copies of the chronos. Standing alone, however, this would have been grounds for rejection, but not for cancellation.

35

Torricellas resubmitted the grievance again. It was rejected on March 3, 2015, again because it was not written entirely on the required forms. On March 16, 2015, the grievance was canceled.

### 3. *The IPA's requirement of a 60-day review.*

The trial court ruled that the mere fact that the Department's IPA regulation (Cal. Code Regs., tit. 15, § 3450) provides no timelines did not make it inconsistent with the IPA's requirement that any review of the denial of a request to amend be completed within 60 days.

Torricellas argues that the trial court misconstrued her argument and, as a result, failed to rule on it.

She is correct. Section 3450 provides that "[i]nmates . . . may appeal the denial of a request [to amend] using the inmate/parolee appeal process established in these regulations." (Cal. Code Regs., tit. 15, § 3450, subd. (b).) In other words, it *incorporates* the Department's grievance regulations as the sole avenue for review of the denial of an IPA request to amend. Torricellas's argument was (and is) that the timelines *in the grievance regulations* — not *in section 3450* itself — are inconsistent with the IPA. While her trial brief was arguably ambiguous on the point, she made it crystal-clear at trial. Moreover, after trial, she objected to the statement of decision based on its failure to address this argument.[15]

---

[15] In a related argument, Torricellas also argued that the regulation limiting grievances to one every 14 days was incompatible with the IPA, because it could prevent an inmate who had other grievances from filing an IPA grievance. The trial court also

36

Ordinarily, we would remand with directions to reconsider. However, Torricellas also argues that the grievance requirements are inconsistent with the IPA as a matter of law.

Again, she is correct. The old regulations gave the Department up to 120 working days to make a final determination on a grievance (plus the time an inmate takes to request review). The new regulations give the Department up to 120 calendar days to make a final determination on a grievance (again, plus the time an inmate takes to request review). Thus, both are inconsistent with the IPA's 60-day maximum.

The Department points out that the two 60-day time limits, for its grievance decision and for its decision on an appeal, both come with the caveat, "unless other statutory or regulatory authority requires a response in less than 60 calendar days . . . ." (Cal. Code Regs., tit. 15, §§ 3483, subd. (g), 3485, subd. (g).) It argues that they therefore do not conflict with the IPA. However, the inmate has 60 days to appeal, leaving the Department with only 60 days total. And because these are two separate time limits, the Department may use up all (or most) of its 60 days making the grievance decision, leaving none (or not enough) of its 60 days for the appeal decision. These regulations do not provide any adequate *mechanism* for ensuring that the Department complies with the 120-day time limit of the IPA.

_____

failed to rule on this argument. However, as a result of the adoption of the new regulations, which have no such limitation, it is now moot.

37

The Department also argues, however, that "noncompliance with the IPA's time limits, in and of itself, is not an 'adverse effect.'" We agree. Under the federal Privacy Act, delay alone is not an adverse effect. (*Perry v. Block* (D.C. Cir. 1982) 684 F.2d 121, 129.) We allowed Torricellas to file a supplemental brief discussing this issue, but the only adverse effect of the delay that she asserted was the ultimate denial of the grievances. There is no causal relationship between the two. We therefore, conclude that Torricellas has no standing to seek an injunction to remedy delay.

### 4. *Erroneous rejection of grievances*.

Torricellas contends that the trial court erred by failing to find whether her grievances challenging the denial of her IPA requests to amend were improperly rejected.[16]

It is true that these two grievances were erroneously rejected.

The first grievance was canceled because it was submitted more than 30 days after the dates of the first two chronos. However, that grievance did not challenge the *contents* of the first two chronos; it challenged the Department's failure to respond to Torricellas's *IPA request to amend* the first two chronos. The Department was required to act on an IPA request to amend within 30 days. (§ 1798.35.) Torricellas submitted the requests to amend on August 27 and 28, respectively. Thus, they were constructively denied on

---

[16] She is not challenging the rejection of her grievances regarding the content of the chronos.

38

September 26 and 27.[17]  Torricellas filed the grievance on October 8.  This was within 30 days after the denial, and thus timely.[18]

The second grievance was repeatedly rejected, supposedly because it was not written entirely on the required forms.  However, it was.  The first two pages consisted of Form 602 (required) and Form 602-A (permitted).  The remainder consisted of crucial supporting documents (the chrono, the request to amend, and the denial of the request to amend).  These were carefully described as "supporting documents" in the Form 602 itself.  The grievance *had to* include all available supporting documents; if it did not, it had to be denied.  Yet evidently it was denied precisely because it *did* include them.

At one point, the grievance was rejected for the additional reason that it duplicated Torricellas's earlier grievance regarding the contents of the chrono.  But it did not.  It was specifically regarding the denial of the IPA request to amend.

It must be remembered, however, that this is an action for violation of the IPA.  It is not an administrative mandate proceeding.  (See Code Civ. Proc., § 1094.5.)  The IPA does not require an agency to adjudicate every review correctly every time.  It merely provides that, if an agency refuses to amend a record, the individual can file a statement

---

[17]    The Department also violated the IPA by failing to "[i]nform [Torricellas] of its refusal to amend the record . . . , the procedures established by the agency for the individual to request a review . . . , and the name, title, and business address of the reviewing official."  (§ 1798.35, subd. (b).)

[18]    Torricellas suggests that her time to file the grievance was extended under the "service by mail" rule, Code of Civil Procedure section 1013.  We need not decide this point, because her grievance was timely even without it.

39

of disagreement. (§ 1798.36.) Also, as we held in part IV, *ante*, if the individual (1) has suffered an adverse determination and (2) has exhausted administrative remedies, it allows the individual to file an action to correct the record. Thus, Torricellas is not entitled to any relief based on the erroneous rejection of these two particular grievances, standing alone.

On the other hand, if the grievance procedure is a sham — if the Department does not genuinely provide review of the refusal of an IPA request to amend — that would be a violation of the IPA. (§§ 1798.35, subd. (b), 1798.36.) Moreover, if it is a sham, Torricellas has suffered an adverse effect, because two of her grievances were erroneously rejected.

The Department argues again that the erroneous rejection of Torricellas's grievances was not an adverse effect: "[N]oncompliance with the statute, without attendant injury, is insufficient. Otherwise, the phrase 'adverse effect' would be superfluous or redundant . . . ." We agree that some violations of the IPA do not inherently have adverse effects. The quintessential IPA violation is the unauthorized disclosure of personal information. (§ 1798.24.) If such a violation could be deemed an adverse effect, without more, even the most banal and inconsequential disclosures would give rise to litigation. By contrast, the failure to provide a meaningful procedure for requesting the amendment of a record is akin to the denial of a fair hearing, which is reversible per se. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677.)

If Torricellas was denied a fair hearing on her grievances, that in itself is an injury. Whether she ultimately should have prevailed on them is beside the point.

Moreover, the patently erroneous rejection of these two grievances was at least some evidence that the procedure was a sham. The complaint had alleged that their rejection was erroneous. Torricellas objected to the statement of decision because it concluded that the grievance procedure was adequate without considering whether her grievances had been rejected for "false," "pretextual," or unauthorized reasons. Therefore, the trial court erred by failing to consider and to make a finding on whether these two grievances were erroneously rejected. (See *In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, 453 & 453, fn. 4 [reversing because statement of decision failed to make necessary findings and failed to consider certain relevant evidence, when appellant objected to statement of decision].)

The trial court did find generally that the grievance procedure was "fair[]," "that it set forth a robust and comprehensive appeal process available to any inmate," and that Torricellas "was able to take advantage of the process." However, it did not take into account the fact that two of her grievances were erroneously rejected.

The trial court must reconsider its ruling that the grievance procedure is fair. If it determines that the procedure is a sham, it must require the Department to provide a genuine procedure for the review of the denial of an IPA request to amend.

41

IX

ASSERTEDLY DEFECTIVE STATEMENT OF DECISION

Torricellas contends that the trial court's statement of decision was defective.

A.      *Additional Factual and Procedural Background.*

On October 17, 2019, the trial court issued a "Statement of Decision." It stated that it was the court's proposed statement of decision, subject to a party's objection. (See Cal. Rules of Court, rule 3.1590(c).)

On November 1, 2019,[19] Torricellas filed a request for a statement of decision, specifying some 40 controverted issues.

Meanwhile, on October 28, 2019, Torricellas had filed a request for an extension of her time to file objections to the proposed statement of decision. On November 7, 2019, the trial court granted an extension through November 26, 2019. (See Cal. Rules of Court, rule 3.1590(m).)

On November 26, 2019, Torricellas filed objections.

On December 19, 2019, the trial court overruled all but one of the objections. In response to that one objection, it amended the statement of decision. Otherwise, it adopted the proposed statement of decision as the final statement of decision.

---

[19]      As noted (see fn. 8, *ante*), Torricellas was entitled to the benefit of the prison delivery rule. Accordingly, we use the dates when she served her filings, not when they were actually filed.

B.    *Discussion.*

Torricellas argues that the trial court's final statement of decision failed to respond to the 40 issues that she specified in her request for a statement of decision.

This presumes that her request for a statement of decision was timely. However, when a trial is concluded either (1) within one day or (2) within less than eight hours over more than one day, a request for a statement of decision must be made before the matter is submitted. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(n).)

The record strongly indicates that the trial here was concluded in less than eight hours. "A nonjury 'trial shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or counsel . . . .' [Citation.]" (*Bevli v. Brisco* (1985) 165 Cal.App.3d 812, 820.) "[J]udicial time off the bench" does not count. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 63.)

The record shows that the trial was in session as follows:

| Date | Start | End | Elapsed |
|---|---|---|---|
| 9/27/19 | 10:24 a.m. | 11:50 a.m. | 1:26 |
| | 1:30 p.m. | 3:30 p.m. | 2:00 |
| 10/4/19 | 9:35 a.m. | 10:41 a.m. | 1:06 |
| | 11:16 a.m. | 12:00 p.m. | 0:44 |
| | 1:30 p.m. | 1:55 p.m. | 0:25 |
| Subtotal: | | | 5:41 |

43

Admittedly, this subtotal does not include Torricellas's rebuttal evidence or closing arguments, the duration of which is not in the record. However, those took up only 23 pages of the reporter's transcript. It seems inconceivable that they lasted as much as 2 hours and 20 minutes, so as to make the trial last more than 8 hours.

Even if there were any room for doubt, we would have to resolve it against Torricellas. "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564**.)** "[I]t is the appellant's burden to provide an adequate record on appeal that affirmatively demonstrates error. [Citation.]" (*Crasnick v. Marquez* (2016) 248 Cal.App.4th Supp. 1, 9.) Because the record does not show that the trial lasted longer than eight hours, we must presume it did not.

In sum, Torricellas's request for a statement of decision was untimely. It follows that the trial court had no obligation to make any findings on any of the issues that she specified. (*In re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1718.)

Torricellas also argues that the statement of decision misstates facts, in four respects. Somewhat unhelpfully, the Department does not respond to this argument.

First, she claims that it treated the contents of the chronos as true. She does not point to any particular passage in the statement of decision in which it supposedly did so, nor have we found any. The statement of decision specifically says: "During pretrial

hearings, the Court found that the underlying facts concerning the chronos were not the proper subject of this trial. That is, the Court found that the IPA does not require a trial to determine if the Plaintiff did or did not commit a violation of a prison rule. . . . For these reasons, the Court did not permit evidence as to the underlying facts of the chronos."

Second, she claims that it labeled the chronos "disciplinary reports" when they were not. Whether the chronos were technically "disciplinary" was not particularly relevant to the trial court's reasoning. Torricellas does not explain how the use of this term was prejudicial. (See Cal. Const. art. VI, § 13; Code Civ. Proc., § 475; *Elsner v. Uveges* (2004) 34 Cal.4th 915, 939.) It does not appear that it was.

Third, she claims that it misstated her argument as to why the 2014 parole denial was an adverse determination. In summarizing Torricellas's arguments, the trial court stated: "She argued that the 2014 parole denial remains an adverse determination because *a transcript of the hearing* and decision remain in her file." (Italics added.) Actually, her argument was that she would suffer an *adverse effect* because *the chronos* remained in her file. She scoffs that a transcript of a parole hearing does not even go in an inmate's general file.[20] The trial court, however, acknowledged that she was also making the latter argument. It said: "Plaintiff argued that notwithstanding the fact that this decision was vacated, the presence of these chronos will result in an adverse effect on

_____

[20]    Elsewhere in her brief, however, she says: "[T]he [parole] 'decision' itself . . . remain[s] in the prison file where it is used and relied on by [Board] officials . . . ." We need not resolve this contradiction.

45

her in the future." Thus, at worst, the trial court simply came up with an additional argument for Torricellas that she herself was not making; that could not possibly have been prejudicial.

Fourth, she claims that it erred by finding that her written responses were statements of disagreement for purposes of the IPA. This pertains only to the trial court's finding that the chronos would have no adverse effect, because her responses were statements of disagreement and were in the file. In part VII, *ante*, however, we held that Torricellas cannot bring a claim for the maintenance of an inaccurate record, even if she suffered or will suffer an adverse effect.

Thus, Torricellas has not shown that the statement of decision misstated any material facts.

X

DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.

On remand, within 60 days after the issuance of our remittitur (which the trial court may extend on motion or application), Torricellas may make a new request for the appointment of counsel. If she fails to make a timely request, or if the trial court both denies the request and denies any alternative measure, then those aspects of the trial court's statement of decision that are not inconsistent with this opinion will stand. If the trial court either grants the request or grants some alternative measure, then it must vacate

46

the statement of decision and hold a new trial; also, if Torricellas requests, it must vacate the order sustaining the Department's demurrer and allow new briefing on the demurrer.

The trial court also must reconsider its ruling that the Department's grievance procedure is fair. If it determines that the procedure is a sham, it must require the Department to provide a genuine procedure for the review of the denial of an IPA request to amend.

Torricellas is awarded costs on appeal against the Department.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

I concur:

McKINSTER
J.

47

[*Torricellas v. California Department of Corrections and Rehabilitation*, E075182]

MENETREZ, J., Concurring and Dissenting.

I would affirm the judgment in its entirety.

First, under *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, appointment of counsel for an indigent, incarcerated party litigating a civil case is "a last alternative" that is to be used when it is "the only way to provide" the party "with access to the courts." (*Id.* at p. 200.)  The Supreme Court emphasized that "access—not the right to counsel—is the keystone" here.  (*Id.* at p. 201.)  Appellant was given meaningful access to the courts: She appeared at trial, testified, examined witnesses, introduced exhibits, presented argument, and responded to the proposed statement of decision.  Accordingly, any failure of the superior court to consider all of the relevant factors concerning appointment of counsel was harmless.  This was not the "unusual case" in which the "last alternative" of appointing counsel was needed in order to give appellant "access."  (*Id.* at p. 201; see *id*. at p. 200.)

Second, I do not believe that appellant has raised the argument that the grievance procedure is a sham.  I therefore would not reverse on that ground.

Because I would affirm the judgment in its entirety, I concur in the judgment in part and respectfully dissent in part.

MENETREZ\
J.

1